UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD LEE HASSELBRING,

               Petitioner,

v.                                         Case Number: 2:08-cv-14845
                                         Honorable George Caram Steeh

DEBRA SCUTT,

               Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

     This is a habeas case filed under 28 U.S.C. § 2254.  Petitioner Richard Lee Hasselbring, a

Michigan state prisoner who was paroled on November 16, 2010, with a discharge date of November

16, 2012, filed this habeas petition, through counsel, challenging his 2004 jury convictions for two

counts of second-degree criminal sexual conduct, which occurred in Eaton County Circuit Court.

Hasselbring was sentenced to concurrent prison terms of one year, six months to fifteen years for

those convictions.  He is currently under the supervision of the Eaton County Parole Office in

Charlotte, Michigan.[1]

     For the reasons stated, the Court will deny the petition.  The Court also will decline to issue

Hasselbring a certificate of appealability.

--------

[1]Hasselbring was incarcerated at the Cotton Correctional Facility in Jackson, Michigan,
when he originally filed his habeas petition.  The proper respondent in a habeas case is the
habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the
facility where the petitioner is incarcerated.  Rule 2(a) of the Rule Governing § 2254 Cases; *see
also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006).  In most cases where a
petitioner is transferred to a different facility after the petition has been filed, the Court would
order an amendment of the case caption.  However, because the Court is denying the petition in
this case, it finds no reason to do so.

# I. BACKGROUND

Hasselbring's troubles in this case arise because of incidents which occurred on September 13, 2003, involving his step-grandson, G.E.[2]  Trial in this case began on April 20, 2004, and concluded on April 23, 2004.  The prosecution presented seven witnesses.  The defense also presented seven witnesses and Hasselbring testified on his own behalf.  Dr. Steven Miller testified as an expert on behalf of the defense.

The Michigan Court of Appeals summarized the facts of the case.  The recitation of those facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  They are as follows.

> Defendant's conviction arose from events of September 13, 2003, involving his then six-year-old step-grandson, the complainant.  Defendant was originally charged with CSC II.  At the preliminary examination, complainant testified that after defendant started tickling him, defendant pulled down complainant's pants and "touched [him] by his mouth" in the "private part."  Complainant also "put [defendant's] private parts in [complainant's] mouth."  On cross-examination, complainant admitted that this was the first time he stated that fellatio occurred, and stated when he gave his previous statements, "there was a lot of people" and he was scared and embarrassed.

> The prosecution moved to amend the complaint and warrant to reflect two counts of CSC I.  Defendant objected.  The district count bound defendant over on two counts of CSC I, concluding that complainant's testimony was sufficiently credible to establish probable cause, and his mother, Lynn Mills, provided corroborating testimony.  The district court rejected defendant's assertion that complainant's allegations were made only after continued questioning by Mills. The district court stated that credibility was for the trier of fact.

> ### B

> At trial, the following facts were adduced.  Defendant lives in Eaton County with his wife, complainant's maternal grandmother.  Complainant's mother (Mills) and father (Eric Emery) share joint physical custody, and complainant alternates spending seven days with each parent.

---

[2]The Complainant's name will not be used for identity protection.

On September 13, 2003, complainant, along with Mills and complainant's one-year-old brother, went to visit defendant. After watching movies, complainant wanted defendant to tickle him as he has done in the past. Defendant normally tickled complainant "where people always tickle." After Mills complained about the noise they were making, defendant and complainant left the house and went into the pole barn. Inside the pole barn was a Volkswagen van. Defendant flipped the back seats of the van down and made the area up as a bed.

According to complainant, while on the "bed," defendant asked complainant if he could tickle complainant again. Unlike before, defendant tickled complainant, while he was clothed, "like in the private part." Complainant unzipped his own pants, and defendant tickled complainant in his private parts while complainant's pants were unzipped. Defendant's pants were unzipped also. Defendant continued tickling complainant until complainant's mother came to the pole barn, upon which defendant "pulled up his pants and zipped them up." Mills approached the van, opened a door, and ordered complainant out.

Complainant further testified that he informed Mills, before leaving defendant's residence, that defendant tickled his private part. Later, when complainant learned that defendant denied that anything occurred, complainant "started crying because [defendant] lied to [his] mom." Complainant stated that defendant told him to "never tell anyone that he did that." Complainant did not remember anything other than the tickling of his private part.

Mills testified that once outside the barn, she asked complainant if any inappropriate touching occurred and complainant with his head down, responded, "no," while he scuffed rocks with his foot. She pursued the issue, and complainant again denied that anything occurred. Mills later telephoned Wayne Sleeman, her live-in boyfriend of two years, to come to defendant's house so she could discuss the situation. Once Sleeman arrived, Mills instructed him to not speak with complainant immediately. Complainant, Mills, Sleeman, defendant and Kathleen ate dinner, but little conversation occurred. Complainant and his mother left to go home.

After driving for ten minutes, Mills again asked whether any inappropriate touching occurred. Complainant denied that anything occurred. Mills then asked how did defendant tickle him and complainant stated that defendant tickled his armpits and his knees. Mills further testified that when they were approximately five minutes from home, complainant blurted from the back seat, "mom, I can't lie to you, I have to tell you the truth." Without objection from defendant, Mills testified that complainant said that "[h]e and Grandpa had touched each other's front private parts." Mills said that when they reached her house, she made complainant look her in the eye and tell her what he had said. Without objection, Mills testified: "And then he went on to say that Grandpa had held his mouth on top of his and he shoved his tongue in his mouth. And he said please tell Grandpa not to do that because

3

that's disgusting."

Sleeman testified that he agreed to speak with complainant. Without objection from defendant, Sleeman testified that complainant said that he and defendant touched each other's private area.

Emery also spoke with complainant. When Emery asked what happened at defendant's house, complainant told Emery that defendant tickled him and then pointed down. Emery testified, without objection, that when he asked complainant to explain, complainant pointed down, while tickling and grabbing his own groin area. Emery testified that complainant also stated that there was skin to skin contact, that defendant made him pull his pants down, that defendant tickled his pee-pee, that defendant touched his penis and that complainant touched defendant's penis. Emery asked his wife, Lynda, to speak with complainant, given her experience both as a pre-school teacher and complainant's former teacher two years ago.

Lynda testified that when she asked complainant if he knew why she and his father were there, complainant stiffened, pulled away from her, and stated, "the Grandpa thing." Without objection, Lynda testified that complainant described the "Grandpa thing" as "Grandpa touched me wrong, he touched me inappropriately." Lynda said she next asked if defendant touched his skin or clothes and whether defendant touched him while his pants were up or down, and that complainant responded that defendant touched his skin and that his pants were down.

Complainant also gave a statement to Detective Timothy Fandel, who has training in interviewing children under the Forensic Interview Protocol. Without objection, the transcript of complainant's interview and the audiotape were admitted.

Fandel considered complainant's reference to tickling as a red flag because it indicated "grooming." When Fandel asked complainant to describe what happened when he and defendant tickled, complainant responded that defendant touched him in the private. When asked to describe what he meant by the private, complainant responded "penis." Complainant told Fandel that defendant licked his ears, licked his mouth, tickled him a little more and that's when the "penis thing happened." When asked if defendant said anything to him, complainant responded that defendant told a lie when he denied that anything happened, but that he (complainant) had told defendant that he would not tell anybody.

When asked if he had seen defendant's private, he nodded his head to indicate yes, and stated that he tickled defendant's and defendant tickled his. Complainant also stated that their penises were outside their pants. Complainant demonstrated how defendant closed his pants when Mills came into the barn.

*People v. Hasselbring*, No. 257846, 2007 WL 1029038, at *1-3 (Mich. Ct. App. Apr. 5, 2007).

4

The Court also finds the following testimony pertinent.

Hasselbring testified at his trial.  He said that he and G.E. liked to tickle and wrestle.  He admitted getting in the van with G.E.  He admitted that there was a bed made up in the van. Hasselbring testified that G.E. jumped in the van, took his sandals off, and said "let's tickle."  Trial Tr. vol. II, 165 Apr. 21, 2004.  Hasselbring said he took off his shoes and jumped in there with him. He admitted that he lied down with G.E. on the bed in the van and they "tickled" each other for three or four minutes.  He said they "tickled and wrestled and tussled around for a couple of minutes" before G.E.'s mother entered the pole barn.  Trial Tr. vol. II, 167 Apr. 21, 2004.  Hasselbring also admitted licking G.E.'s face.  He denied any sexual touching or inappropriate touching with G.E.

The jury convicted Hasselbring.  He was sentenced as described.

Following his sentencing, Hasselbring filed a direct appeal with the Court of Appeals, along with a motion for a remand for a *Ginther*[3] hearing, raising claims concerning the effectiveness of trial counsel, prosecutorial misconduct, the sufficiency of the evidence, trial court error in allowing the prosecutor to amend the charges, and the denial of his statutory right to a preliminary examination and notice of the charges after the magistrate allowed the prosecutor to add two additional counts of CSC I.

Hasselbring also filed a motion for a new trial, judgment of acquittal, resentencing, or alternatively, for a *Ginther* hearing with the state trial court.  The trial court granted the motion for acquittal as to count two and entered an opinion ruling that count two should have been dismissed

---

[3]*People v. Ginther*, 390 Mich. 436, 323 N.W.2d 922 (1973).  A *Ginther* hearing is a post-conviction evidentiary hearing in the trial court, the purpose of which is to establish the facts that could prove a claim of constitutionally ineffective assistance of counsel.

at the conclusion of the prosecutor's proofs because there was insufficient evidence for the jury to convict on a second count of CSC II.  The trial court further ordered resentencing because the sentence imposed was outside the correct guidelines of zero to seventeen months.  *People v. Hasselbring*, No. 03-327-FH (Eaton Cnty. Circuit Court May 18, 2005).

On October 6, 2005, the Court of Appeals denied Hasselbring's motion to remand for a *Ginther* hearing.  *People v. Hasselbring*, No. 257846 (Mich. Ct. App. Oct. 6, 2005).  However, on April 17, 2006, after oral argument, the Court of Appeals issued an order remanding the case to the trial court for a *Ginther* hearing, but retained jurisdiction.  *People v. Hasselbring*, No. 257846 (Mich. Ct. App. Apr. 17, 2006).

The trial court then held an evidentiary hearing.  On June 22, 2006, the trial court entered an opinion granting Hasselbring a new trial on the ground of ineffective assistance of counsel, finding that counsel was ineffective for failing to object to hearsay evidence and opinion testimony and the hearsay evidence and opinion testimony were not necessary for Dr. Miller to give his expert opinion.  *People v. Hasselbring*, No. 03-327-FH (Eaton Ctny. Circuit Court June 22, 2006).

On July 21, 2006, the Court of Appeals affirmed the trial court's decision and remanded the case to the trial court for trial.  *People v. Hasselbring*, No. 257846 (Mich. Ct. App. July 21, 2006).

The prosecution subsequently filed an application for leave to appeal with the Michigan Supreme Court, appealing both the trial court's ruling granting a new trial and the Court of Appeals's order remanding the case for a new trial.  On November 15, 2006, the Supreme Court vacated the Court of Appeals's order and remanded the case to the Court of Appeals for plenary consideration. *People v. Hasselbring*, 477 Mich. 931, 723 N.W.2d 458 (2006).

On April 5, 2007, the Court of Appeals reversed the trial court's judgment of acquittal on

6

CSC II, reversed the order granting a new trial, affirmed in all other respects, and remanded for proceedings consistent with its opinion. *Hasselbring*, 2007 WL 1029036, at *16. The Court of Appeals also denied Hasselbring's motion for reconsideration. *People v. Hasselbring*, No. 257846 (Mich. Ct. App. May 31, 2007). On November 21, 2007, the Michigan Supreme Court denied Hasselbring's application for leave to appeal the April 5, 2007 judgment of the Court of Appeals. *People v. Hasselbring*, 480 Mich. 945, 741 N.W.2d 13 (2007).

Hasselbring did not file a petition for writ of certiorari with the United States Supreme Court. Rather, on November 18, 2008, he filed this habeas action raising the same claims raised in the state appellate courts.

Respondent, through the State Attorney General, argues in his answer to the petition that the claims are meritless.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas review of state-court decisions. Under the AEDPA, a federal court's review of a habeas proceeding is limited. A federal court may not grant a writ of habeas corpus unless the state adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

The Supreme Court clarified that standard in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

7

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Recently, in *Harrington v. Richter*, --- U.S. ---, ---, 131 S.Ct. 770, 786 (2011), the United

States Supreme Court held:

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, [] (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S.Ct. 1411, 1413-14, [] (2009) (internal quotation marks omitted).

With those standards in mind, the Court proceeds to address Hasselbring's claims.

### III.  DISCUSSION

#### A.  Claim I–Ineffective Assistance of Counsel

In his first habeas claim, Hasselbring alleges that he was denied due process and a fundamentally fair trial where trial counsel refrained from objecting to the hearsay statements made by the Complainant to the adults as part of his defense strategy; defense counsel believed the statements were necessary for the admission of his expert's, Dr. Steven Miller's, opinion testimony.

The Complainant's statements to others were not always consistent. He told his mother three times that nothing happened with his grandpa. Then, he told her that something did happen–that he and his grandpa had touched each other's front private parts. He told his father that grandpa was

8

tickling him on his private parts, and that grandpa made him pull down his pants and tickled him "skin to skin." The Complainant told his step-mother (Lynda Emery) that grandpa touched his skin when his pants were down. He did not tell her that he had touched his grandpa's penis and his grandpa had touched his penis. The Complainant provided a detailed statement to the detective, which was admitted at trial. Defense counsel did not object to the testimony.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates

9

both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Recently, in *Harrington*, the United States Supreme Court stated:

"Surmounting *Strickland's* high bar is never an easy task." An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, --- U.S. at ---, 131 S.Ct. at 788 (citations omitted).

The Michigan Court of Appeals, specifically citing the *Strickland* standard, held that Petitioner failed to satisfy either prong of *Strickland*. First, in addressing whether the trial court correctly determined that the defense's expert's testimony would have been admissible without the

hearsay and opinion testimony at issue, the Court of Appeals reasoned:

> MRE 703 provides, in relevant part: "*The facts or data in the particular case upon which an expert based an opinion or inference shall be in evidence*." (Emphasis added.) Here, Miller opined that complainant's testimony was not reliable. Defense trial counsel did not object to the hearsay testimony about what complainant told others, because he believed this testimony was necessary as a foundation for Miller's later testimony that complainant was not reliable. We agree. The clear implication of Miller's testimony is that complainant was not reliable because he had changed his story. Miller testified that he reviewed Fandel's interview with the complainant, and stated: "And so what you're noticing in these kind of cases is that [the] story evolves and changes as it goes along." Miller testified that " from the testimony I heard, the reliability of this child could be questionable." We fail to see how Miller could have testified that complainant was not reliable, without the testimony showing that complainant's story had changed. Accordingly, because Miller relied on the fact that complainant had changed his story in response to questioning from various people, these facts (this testimony) on which Miller relied were required to be in evidence under MRE 703, and the trial court erred as a matter of law in concluding otherwise.

*Hasselbring*, 2007 WL 1029036, at *4 (footnotes omitted).

Second, the Court of Appeals found trial counsel's failure to object to testimony he properly believed necessary for the admission of Miller's opinion did not deprive Hasselbring of effective assistance of counsel:

> Here, defense trial counsel did not object to the hearsay testimony about what complainant told others, because he believed this testimony was necessary as a foundation for Miller's later testimony that complainant was not reliable. This belief by defense trial counsel was correct, as concluded above. Therefore, defense trial counsel could not reasonably be expected to have made an objection to testimony that was necessary for the admissibility of his expert's testimony. To have successfully objected to the hearsay testimony regarding complainant's statements to various persons, would have resulted in the exclusion of Miller's testimony regarding complainant's reliability *vel non*, and thus in the nullification of defendant's defense.
>
> Defense trial counsel therefore strategically decided not to object to the hearsay testimony. This was a matter of trial strategy, which this Court will not second-guess. The fact that trial counsel's strategy ultimately failed does not render its use ineffective assistance. Under the circumstances, defendant has not shown that counsel acted unreasonably. The trial court erred as a matter of law in concluding otherwise.

11

*Hasselbring*, 2007 WL 1029036, at *5 (citations omitted).

Dr. Miller criticized Detective Fandel's failure to explore alternative hypotheses in his interview with the Complainant given that children between the ages of three and six years of age try to please adults, and the number of pre-interviews between the Complainant and his mother, his father, his father's wife, and his mother's boyfriend. According to Miller, those interviews teach the child to provide the adults with what they want to hear. Although Miller could not comment on credibility, he stated this case was consistent "with the kind of things that might have influenced [the Complainant] to make a false statement." Miller concluded that "the reliability of this child could be questionable." Trial Tr. vol. II, 223 Apr. 21, 2004.

The Court of Appeals, in evaluating whether the admission of Miller's testimony would have been admissible without the hearsay and opinion testimony at issue, found that defense counsel did not object to what the Complainant told others because he believed the testimony was necessary as a foundation for Miller's testimony that the Complainant was not reliable. Miller testified that the reliability of the child could be called into question, given the testimony of the adults. Defense counsel also testified to such at the *Ginther* hearing held on June 2, 2006.

The Court of Appeals concluded that the evidence was not impermissible opinion testimony and was not prejudicial so as to deprive Hasselbring of a fair trial. The Court of Appeals noted that Hasselbring, during his testimony, admitted taking the Complainant to the van and tickling him. The court also indicated that the Complainant's allegation was plausible given his mother's observations in the pole barn. Mills testified that when she walked into the pole barn, she saw the top of her son's head and Hasselbring pulling up and buttoning his pants. That testimony corroborated the Complainant's testimony at trial.

12

This Court finds that the Court of Appeals's decision regarding this issue is neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  Petitioner is not entitled to habeas relief with respect to this claim.

### B.  Claim II, III, and IV–Prosecutorial Misconduct and Procedural Default

Hasselbring next asserts that he is entitled to habeas relief due to prosecutorial misconduct. Specifically, he asserts that the prosecutor committed misconduct by repeatedly eliciting opinion evidence that the Complainant was telling the truth, by repeatedly eliciting inadmissible hearsay statements of what the Complainant told others, and by misrepresenting facts not in evidence.  As a initial matter, the Court notes that these claims  are procedurally defaulted because they were raised on direct review but were unpreserved for appeal by trial counsel's failure to contemporaneously object at trial.  Contemporaneous objections were not lodged in the trial court, which would serve as an adequate state-law bar.  *See People v. Callon*, 256 Mich.App. 312, 662 N.W.2d 501, 513 (2003).  The Michigan Court of Appeals reviewed these unpreserved claims for plain error and considered them to be without merit.

The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *See Brooks v. Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010) (citation omitted).  The state may assert a procedural default when the last, reasoned opinion of the state courts clearly relies on a procedural bar in refusing to consider a claim.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If a petitioner is guilty of a procedural default in the state courts, the federal habeas court will only entertain the defaulted issue if petitioner bears the burden of showing cause and prejudice or can show actual innocence.  *See Murray v. Carrier*, 477 U.S. 478, 485

(1986); *see also Harrington*, --- U.S. at ---, 131 S.Ct. at 787 (same).

In the present case, all of the prerequisites to a finding of procedural default are present. The Court of Appeals expressly found that Hasselbring's challenge to these claims had not been preserved for review because of defense counsel's failure to make a contemporaneous objection at trial. *Hasselbring*, 2007 WL 1029036, at *7. The fact that the court went on to review the issue under a plain-error standard does not constitute a waiver of state procedural default rules. *See Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *see also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules."). Consequently, in the usual case, Hasselbring would have the burden of showing cause and prejudice or actual innocence to overcome the default.

Both the Supreme Court and the Sixth Circuit have indicated, however, that the district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008). In the present case, Hasselbring's purported constitutional claims are indisputably meritless, so analysis of the complicated procedural default issue is unnecessary.

### 1. Prosecutorial-Misconduct Claims

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that

the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused. *Id.*; *see also Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006) (same); *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Hasselbring first asserts that the prosecutor engaged in misconduct by eliciting improper opinion evidence and hearsay testimony. Specifically, Hasselbring objects to the prosecutor eliciting testimony from the detective that the Complainant was telling the truth.

The Michigan Court of Appeals considered this issue on plain-error review and rejected it.

15

The court concluded that the testimony was not impermissible opinion testimony.  Rather, the detective's testimony referred to his previous experiences and was not a commentary or opinion on the Complainant's credibility.  Moreover, the court stated that the jury was free to conclude that the case fell into the category of false allegations, if it so chose to do.  The Court finds that decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.

Second, the Court of Appeals, in reviewing the father's and mother's testimony also rejected Hasselbring's claims, stating:

> Next, defendant cites complainant's father's testimony indicating that complainant was "pretty honest."  Defendant also challenges complainant's father and Mills's testimony indicating that (1) complainant exhibited certain behavior when he was lying, i.e. looking down, scuffing rocks and playing with his fingers, and (2) complainant would state he was just "kidding" when he was lying.

> Regarding the comment that complainant was "pretty honest," defendant failed to object to the testimony, and therefore defendant's claim is subject to plain error analysis.  Because " pretty honest" is not framed as an absolute belief of complainant's credibility (and indeed, could be viewed as "damning with faint praise"), and defendant failed to request a curative instruction that could have eliminated any possible prejudice, defendant has not established a basis for reversal.

> Defendant also cites to portions of Lynda's testimony:

> Q:  What did [complainant's father] say to you when he came out of the house?
> A:   His first statement was: "[complainant] doesn't lie to me, that was his first statement.  And then he said-he told us that [complainant] told him Grandpa touched my penis."

> Read in context, the prosecution was here attempting to establish the consistency in complainant's allegations, given defense counsel's comments in his opening statement that complainant gave differing versions of events.  Accordingly, defendant opened the door to the prosecution's line of questioning.  Furthermore, defendant's failure to request a curative instruction that could have eliminated any possible prejudice, eliminates a basis for reversal.

> Defendant also argues that the trial court was required, sua sponte, to exclude the opinion evidence at issue, so that defendant receives a fair trial.  We disagree.

16

> The evidence at issue was either not impermissible opinion testimony, or was not sufficiently prejudicial so as to deprive defendant of a fair trial. In sum, defendant has not established that he was denied a fair trial on the basis that the prosecution elicited improper opinion testimony.

*Hasselbring*, 2007 WL 1029036, at *7-8 (citations omitted).

The Court agrees with the Court of Appeals's decision. Those witnesses did not comment directly on the credibility of the Complainant's sexual assault allegations. Rather, it was the defense's theory to show how the six-year-old Complainant's testimony was unreliable by showing how his story changed in response to repeated questioning by trusted adults. Thus, to rebut that theory, the prosecutor went about showing that the Complainant's responses were consistent. In order to do that, the prosecutor had to show the circumstances surrounding the questioning and how the child responded in each instance.

The Court finds that the prosecutor did not elicit improper vouching testimony in presenting the case. Therefore, the Court concludes that the Court of Appeals's decision regarding these issues is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and Hasselbring is not entitled to habeas relief.

Third, Hasselbring asserts that the prosecutor engaged in misconduct by eliciting inadmissible hearsay statements of what the Complainant told others about the incident.

In regard to this issue, the Court of Appeals found that "the hearsay testimony was necessary for defense trial counsel to admit the testimony of Miller," and thus, it was trial counsel's strategy "not to seek exclusion of the hearsay testimony." *Hasselbring*, 2007 WL 1029036, at *8. The Court of Appeals further stated:

> A party may not seek appellate relief based on an evidentiary error to which

17

he contributed by plan or negligence. "Defendant may not now claim as error on appeal that evidence he purposely used in support of his defense theory was inadmissible." Defendant purposely used the challenged hearsay testimony to support his defense theory. Accordingly, appellate relief is precluded.

*Hasselbring*, 2007 WL 1029036, at *8.

The Court agrees with the Court of Appeals's reasoning with respect to this issue. And, for the reasons stated in analyzing Hasselbring's ineffective-assistance-of-counsel claim, the Court concludes that Hasselbring purposely used the challenged hearsay testimony to support his defense. He therefore is not entitled to habeas relief regarding this claim.

Finally, Hasselbring argues that the prosecutor committed misconduct by misrepresenting facts not in evidence in order to mislead the jury. Hasselbring challenges the following arguments by the prosecutor:

he couldn't tell you in his own words the specifics of what happened to him.

* * *

Ladies and gentlemen, he knows, he remembers what happened. He just didn't wanna talk about it. He's a six-year old kid, he's embarrassed, he's facing all of you and he's asked to describe an act many people never have to.

Trial Tr. vol. III, 6, 10 Apr. 23, 2004.

The prosecutor told the jury in her opening statement that the Complainant would testify to inappropriate touching and acts of fellatio. However, when the Complainant testified, he could not describe the acts of fellatio. Rather, he described his grandpa touching his front private part. He was unable to describe that he touched his grandpa's penis. The Complainant, however, did remember in detail the circumstances surrounding the acts, but every time he was asked what happened when his grandpa's pants were down, he said that he forgot what his grandpa did to him.

The Court of Appeals also reviewed this claim for plain error and found that Hasselbring was

18

not entitled to relief.  This Court agrees.

The prosecutor committed no error in explaining to the jury why the Complainant did not testify as anticipated.  As the Court of Appeals stated: "[g]iven the complainant's specific testimony concerning matters outside the van and his evasive testimony concerning what happened inside the van, the prosecutor properly argued an inference, *based on evidence*, that complainant remembered more than he was willing or able to admit."  *Hasselbring*, 2007 WL 1029036, at *6 (emphasis in the original).

Trial counsel is free to argue reasonable inferences from the evidence.  *United States v. Young*, 470 U.S. 1, 9 (1985).  Moreover, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."  *Id.* at 11.  Taken in context, and for the reasons stated by the Court of Appeals, the prosecutor's remarks were not improper.  *Byrd v. Collins*, 209 F.3d 486, 537 ( 6th Cir. 2000).

Against that backdrop, the Court concludes that Hasselbring is not entitled to habeas relief with respect to his prosecutorial-misconduct claims.

## C.  Claim V–Insufficient-Evidence

In his fifth habeas claim, Hasselbring alleges that he was denied due process because there was insufficient evidence to sustain the verdict and that the verdict was against the great weight of the evidence.

To the extent that Hasselbring alleges that the jury verdict was against the great weight of

the evidence, his claim is not cognizable on habeas review.  It is well established that habeas review is not available to correct errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.  *See Dell v. Straub*, 194 F.Supp.2d 629, 648 (E.D. Mich. 2002).  In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'"  *Smith v. Jones*, No. 05-CV-72971, 2010 WL 1782238, at *3 (citing *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985)).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must

give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir.1993). However, under the amended version of section 2254(d)(1), a federal habeas court must apply a more deferential standard of review of the state-court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *Smith*, 2010 WL 1782238, at *3 (citations omitted).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas-corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also Jackson*, 443 U.S. at 324 n.16 (same); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, Michigan Compiled Laws § 750.520c(1)(a), the prosecution must prove that Hasselbring (1) intentionally touched the Complainant's (or had the Complainant touch his) genital area, groin, inner thigh, buttock or breast; (2) for a sexual purpose or could reasonably be construed as having been done for a sexual purpose; and (3) the victim was under thirteen years of age.

In this case, the Complainant's testimony alone satisfies the elements for CSC II. He told the jury that he was six-years old when he went into a pole barn with his grandpa and climbed into a VW van. His pants got unzipped and his grandpa tickled his private part. He remembered that his grandpa's pants were unzipped but he could not recall what happened. His grandpa told him never to tell anyone about the incident.

21

Furthermore, the Complainant's mother's testimony corroborated his testimony. She found them in the back of a VW van in the pole barn on Hasselbring's property. When she called out to the Complainant, she saw Hasselbring adjusting his pants. She found it suspicious that they were inside a closed van in eighty-five degree weather. When question, the Complainant told his mother what had happened.

The following testimony also corroborates Complainant's testimony. The Complainant's mother's boyfriend testified that Complainant told him that his grandpa touched his privates and that he touched his grandpa in his private area. The Complainant's father testified that Complainant told him that grandpa tickled me in the "pee pee." Grandpa touched his penis and he touched his grandpa's penis. Detective Fandel conducted a forensic interview with Complainant during which Complainant described what Hasselbring did to him. Fandel testified that Complainant told him that his grandpa pulled down his pants and underwear. Complainant told Fandel that when his grandpa pulled his pants down, his grandpa told him that it was "secret and naughty." Complainant told Fandel that his grandpa tickled his privates and that "I tickled his and he tickled mine." Complainant demonstrated for Fandel what his grandpa did when his mom came into the pole barn. Fandel testified that Complainant covered up his penis with hands, then zipped up and buttoned his pants.


Against that backdrop, the Court concludes that the record supports the state courts' adjudications that there was sufficient evidence to sustain the verdict. Hasselbring has failed to establish that those adjudications were either contrary to, or an unreasonable application of, clearly established Supreme Court precedent. He is not entitled to habeas relief on this claim.

22

### D.  Claim VI–Ineffective-Assistance-Of-Counsel With Respect to Prosecutorial Misconduct

In habeas claim six, Hasselbring repeats the claims of error set forth in Arguments I-V as a basis for an ineffective assistance of counsel claim.  He claims the cumulative effect of the alleged errors deprived him of the effective assistance of counsel.  The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002), *opinion corrected on denial of rh'g*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).  In other words, the cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief.  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied*, *Moore v. Simpson*, 549 U.S. 1027 (2006).  Therefore, the Court concludes that Hasselbring is not entitled to habeas relief on this ground.

### E.  Claim VII–Error in Amending the Information

In his seventh habeas claim, Hasselbring contends that the trial court erred in allowing the prosecutor to amend the Information to charge him with two counts of CSC II.  At the conclusion of the prosecutor's proofs, Hasselbring moved for a directed verdict as to both counts of CSC I.  The trial court granted the motion because Complainant failed to establish that any penetration occurred.  The trial court also granted the prosecutor's motion to amend the Information to charge him with two counts of CSC II, involving sexual touching and not penetration.  Hasselbring now argues that the trial court erred in allowing that amendment.

The Michigan Court of Appeals, in reviewing this claim for plain error, found that the trial court did not err in granting the prosecution's motion to amend the Information.  Citing both

23

Michigan Complied Laws section 767.72 and Michigan Court Rule 6.112(H), the Court of Appeals found that an Information may be amended before, during, or after trial, to cure a defect, imperfection or omission, as long as the defendant is not prejudiced. Unfair prejudice includes unfair surprise, inadequate notice, or inadequate opportunity to defend. *Hasselbring*, 2007 WL 1029036, at *12.

The Court of Appeals also found that Hasselbring was not unfairly surprised by the amendment because he was originally charged with CSC II and a preliminary examination was held on that charge. Further, the Court of Appeals found that he could not claim unfair prejudice because (1) he could not articulate how his defense or strategy would have been different had he been bound over as originally charged, and (2) he did not file a motion to discharge the jury or seek a continuance. *Hasselbring*, 2007 WL 1029036, at *10-11.

Moreover, Hasselbring's claim turns on a violation of state, not federal, law, as discussed above in section III, C. This Court is bound by the state court's decision on this issue. *See Tegeler v. Renico*, 253 F.App'x. 521 (6th Cir. 2007). Hasselbring has failed to demonstrate a violation of a constitutional due process right. The closest due process right would be "fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988). As stated, Hasselbring was originally charged with two counts of CSC II, and had a preliminary examination on those charges. Thus, he was not unfairly surprised or prejudiced by the amendment. The Court concludes that he has failed to demonstrate a violation of his rights to a fair trial and due process by the amendment of the Information. He is not entitled to habeas relief with respect to this claim.

### F.  Claim VIII–Right to a Preliminary Examination and Notice of Charges

24

In his final habeas claim, Hasselbring alleges that his statutory right to a preliminary examination and his constitutional right to notice of the charges was violated when the magistrate allowed the prosecutor to add two counts of CSC I, when the Complainant testified at the examination to acts of fellatio.  Hasselbring was originally charged with two counts of CSC II.  At the conclusion of the proofs at the preliminary examination, the prosecutor moved to amend and bind over on two counts of CSC I rather than CSC II to conform to the proofs.  Preliminary Examination Tr. 68-71 Nov. 7, 2003.

The Michigan Court of Appeals found the bind-over on the CSC I charges did not violate Hasselbring's rights to a preliminary examination or constitutional right to notice of the charges because he had not shown that the amendment caused unfair surprise, inadequate notice, or an insufficient opportunity to defend.  Rather, he had the opportunity to question the Complainant regarding the specific allegations during the examination.  He was able to elicit from Complainant that his testimony describing fellatio was the first time he indicated that fellatio occurred. *Hasselbring*, 2007 WL 1029036, at *11-12.

Here, again, Hasselbring's argument involves a question of state law, not federal law.  *See Estelle*, 502 U.S. at 67-68.  As stated above, the closest due process right would be "fair notice of the charges against him to permit adequate preparation of his defense."  *Olsen*, 843 F.2d at 930.  However, Hasselbring was not unfairly surprised or prejudiced by the bind-over on two amended counts of CSC I.  He had an opportunity to question the Complainant on the new allegations of penetration during the preliminary examination.  The Sixth Circuit has held: "A charging document that fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira v. Marshall*, 806 F.2d 636,

639 (6th Cir. 1986).  Hasselbring has failed to demonstrate a violation of his statutory right to a preliminary examination and constitutional right to notice of the charges occurred as a result of the magistrate's bind over on the amended charges of CSC I.  He is not entitled to habeas relief with respect to this claim.

### G.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U .S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . .  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find its assessment of Hasselbring's claims debatable or wrong.  The Court therefore declines to issue Hasselbring a certificate of appealability.

## IV.  CONCLUSION

The state courts's decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  Hasselbring has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, **IT IS ORDERED** that Hasselbring's petition for a writ of habeas corpus [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Hasselbring a certificate of appealability.

Dated:  January 23, 2012

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record  on
January 23, 2012, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

27